# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2298

_____

| | | |
|---|---|---|
| Patrick Pierce, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| United States of America, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 18, 2012
Filed: July 19, 2012

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

The government appeals the district court's grant of 28 U.S.C. § 2255 habeas corpus relief to Patrick Pierce on the basis of ineffective assistance of counsel at sentencing resulting in an incorrectly calculated Guidelines range. We reverse.

## I.    BACKGROUND

In 2009, Pierce was charged with and pled guilty to being a felon in possession of ammunition, based upon an incident wherein Pierce fired shots in public, and continued to fire shots while leading police on a high speed chase through metro St.

Louis. During the chase, Pierce threw the gun out of the car and it was apparently never recovered, but police did find plenty of ammunition along the trail. In the plea agreement, Pierce agreed to waive "all non-jurisdictional issues including, but not limited to, any issues relating to pretrial motions, hearings, and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea." With regard to sentencing issues, the plea agreement stated that Pierce waived "all rights to appeal all sentencing issues," so long as the court sentenced Pierce within the Guidelines range based upon the bargained-for recommendations. Finally, Pierce also waived his right to bring § 2255 claims, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

At sentencing, an issue arose as to whether Pierce's 2005 conviction for resisting arrest was a "crime of violence" for purposes of Pierce's base offense level calculation.[1] Because of the qualifying crime of violence, Pierce's base offense level was 20 under United States Sentencing Guidelines Manual § 2K2.1(a)(4)(A) (2008). Without that qualifying crime, Pierce's base offense level would have been 14. Pierce's trial counsel argued at sentencing that Pierce's conviction for resisting arrest did not fit within the definition of a crime of violence. Counsel did not make the argument that the prior offense should not qualify to raise the base offense level because it was not given any criminal history points under U.S.S.G. § 4A1.1. See U.S.S.G. § 2K2.1 cmt. n.10 (directing that only felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c) should be counted to raise the base offense level). The trial court overruled the objection, found that Pierce had a sentencing range of 57 to 71 months, and sentenced Pierce to 57 months. On direct appeal, with new counsel, Pierce first raised the issue of whether the resisting arrest offense was a qualifying crime of violence sufficient to enhance his base offense level

---

[1]In the plea agreement, the parties agreed that the base offense level would be either 14, 20 or 24, depending on the nature of his criminal history calculation under United States Sentencing Guidelines Manual § 2K2.1.

due to the fact that it did not receive any criminal history points in his Guideline calculation. However, we enforced the appeal waiver in the plea agreement and dismissed the appeal. United States v. Pierce, 382 F. App'x 527, 528 (8th Cir. 2010) (per curiam). The panel noted that any claim for ineffective assistance of counsel was premature. Id. Pierce next filed a pro se § 2255 motion, the district court appointed counsel, and counsel filed an amended § 2255. One of the claims was for ineffective assistance of counsel for failing to recognize and argue that the predicate crime did not receive any criminal history points under the Guidelines and thus could not qualify as a crime of violence to raise the base offense level. The district court granted relief on this claim, and the government appeals.

## II.    DISCUSSION

We review the grant of 28 U.S.C. § 2255 relief de novo, including reviewing the underlying factual findings for clear error. Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir.), cert. denied, 132 S. Ct. 315 (2011). To prove ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), a defendant has the burden of showing that (1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance. Id. at 687. The first part of the test requires a showing "that counsel's representation fell below an objective standard of reasonableness." Id. at 688. There is a "strong presumption" that counsel's performance fell within the range of reasonable professional assistance. Id. at 689. To prove prejudice in the second prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Pierce argues that trial counsel was ineffective for failing to properly challenge his prior offense for resisting arrest. Pierce argues that counsel should have argued that the offense did not qualify as a crime of violence to enhance his base offense

level because it did not receive any criminal history points. At issue was an incident that took place on January 19, 2005, where Pierce ultimately pleaded guilty to three offenses: tampering in the first degree, tampering in the second degree and resisting arrest. He was sentenced to suspended concurrent sentences of five years for first-degree tampering, four years for resisting arrest, and one year for second-degree tampering. After Pierce pleaded guilty to the instant charge, the presentence investigation report grouped these three convictions together and assessed one criminal history point to the group. See U.S.S.G. § 4A1.2(a)(2) (providing that certain prior convictions, including those committed on the same day without an intervening arrest, are treated as one sentence for the purpose of assigning criminal history points under U.S.S.G. § 4A1.1). The offense which is "assigned" the criminal history point within that group is the offense receiving the "longest sentence of imprisonment if concurrent sentences were imposed." King v. United States, 595 F.3d 844, 849 (8th Cir. 2010) (quotation omitted). In Pierce's case, the resisting arrest conviction was the only one in the group from the January 19, 2005 incident that qualified as a crime of violence. However, since the first-degree tampering charge had the longest sentence within that group, it was the one that would have been assessed a criminal history point. U.S.S.G. § 2K2.1 cmt. n.10 (directing that for purposes of enhancing the base offense level, the court should use "only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)").

In King, we examined what we described as the defendant's "relatively sophisticated [pro se] argument" that his prior two convictions for resisting arrest did not meet the definition of "prior felony conviction" under the career offender provisions of the Guidelines in U.S.S.G. § 4B1.1. 595 F.3d at 847, 849. One of the groups of convictions used to invoke the career offender provisions in King included both resisting arrest and other crimes not classified as crimes of violence. Based upon a group of offenses from an April 1, 2005, state court sentencing, King received a ten-year suspended sentence for a drug trafficking charge, concurrent four-year suspended sentences for one count of unlawful use of a weapon and one count of

resisting arrest and a concurrent one-year sentence for third-degree assault. Id. at 849. Of those offenses, only the resisting arrest charge was a crime of violence that would have, had it not been grouped with the other charges, been a predicate for the career offender guideline. However, because the trafficking sentence was the longest of the four, it should have received the criminal history point. And, similar to application note 10 to § 2K1.1, U.S.S.G. § 4B1.2(c) provides that sentences for career-offender-qualifying convictions must be "counted separately under the provisions of § 4A1.1(a), (b), or (c)." See also United States v. Peters, 215 F.3d 861, 862 (8th Cir. 2000) ("To qualify as a 'prior felony' for career offender purposes, the felony must receive criminal history points under subsection (a), (b), or (c) of 4A1.1. See U.S.S.G. § 4B1.2(c).")

We acknowledged King's argument that "[s]ince the resisting arrest charge did not receive a criminal history point . . . it cannot be a predicate" for the career offender guideline, and held that "[a]fter considerable study, we conclude that King's reading of the guidelines is plausible." King, 595 F.3d at 849-50.[2] However, we did not find that King's trial counsel was ineffective for failing to raise this issue. We noted that counsel is not ineffective for failing to raise an argument that was novel at the time of the proceeding, even if later found to be meritorious. Id. at 853. Instead, we granted relief on the basis that King's appellate counsel was ineffective for failing to challenge the appeal waiver because the sentencing court had not followed the recommendations of the plea agreement, and for failing to raise this Guidelines issue on appeal after King had raised it in a pro se filing. Id.

---

[2]We were also "studying" King's argument that in another set of grouped offenses, each of which were given the same length concurrent sentences, the crime of violence predicate should not get the assigned criminal history point pursuant to the "rule of lenity." King, 595 F.3d at 850.

Our analysis in King indicates that the Guideline argument in dispute here[3] was novel and sophisticated. In fact, we spent a good deal of time in the King case setting forth the complexities of the grouping rules and pondering King's argument, calling this reading of the Guidelines "plausible." Id. at 850. Pierce argues that the claim in King was actually not novel because the King court relied upon two cases from 2000 to support its reasoning that King's argument was plausible. In Peters, we noted in a direct appeal case that to qualify as a "crime of violence" for career offender purposes, the felony must receive criminal history points under § 4A1.1(a), (b), or (c). 215 F.3d at 862. It was unclear in Peters whether the nonviolent or the violent offense in a group of related cases was listed first and therefore should have been counted for purposes of the criminal history points. We found that the case must be remanded for a new sentencing hearing for the district court to "use its discretion in applying the sentencing guidelines to the facts of the case." Id. at 863. In United States v. Charles, 209 F.3d 1088 (8th Cir. 2000), also a direct appeal, the fighting issue was whether the defendant's base offense level was correctly calculated because two prior, related burglary offenses should not have been counted separately to raise the base offense level under § 4A1.1 Id. at 1090. In both Peters and Charles, we examined the grouping issue on direct appeal and found that the sentences either were (Charles) or possibly were (Peters) incorrectly calculated. See also United States v. Ruhaak, 49 F. App'x 656, 656-57 (8th Cir. 2002) (per curiam) (finding, in an unpublished opinion on direct appeal, that a prior felony grouped with other counts with identical sentences was arguably not given criminal history points and that the rule of lenity applied, requiring reversal). Here, Pierce argues that trial counsel

---

[3]Although in King the issues involved the application of the career offender guideline (§ 4B1.1) and here the enhanced base offense level guideline (§ 2K2.1) is involved, we believe this is a distinction without much of a difference. While the application note in § 2K2.1 explicitly says what § 4B1.2 only alludes to (that prior felonies only "qualify" if they are given criminal history points), King's trial counsel would have had the benefit of our decision in Peters which clearly stated the criminal-history-point argument.

should have raised the grouping and criminal history point argument as explicated in Peters and Charles. Pierce also claims that his current counsel raised this claim in briefing on direct appeal prior to the date King was decided, undermining the idea that this argument was first derived in King.

We agree that the argument did not originate in King. The Guideline sections at issue have been in effect for several years. However, this is not your garden variety Guidelines argument. As the district court noted, it is "counterintuitive because it is based on the premise that a defendant should receive a *lower* sentence because he has *more* prior convictions." Addendum at 9 n.4 (emphasis in original). Nor does the issue appear to be frequently litigated. While at least three[4] times our court has granted some form of relief to the defendant on *direct appeal*[5] on the basis of this or a similar argument, none of our decisions have granted a defendant collateral relief on the basis of ineffective assistance of counsel for failing to spot this issue. We declined to do so in King. In fact, this "relatively sophisticated" and "counter-

[4]Three other of our prior cases discuss the general principles of grouping prior convictions and assigning criminal history points, but the specific issue in the instant case was not the litigated issue on appeal in United States v. Lazarski, 560 F.3d 731 (8th Cir. 2009) (litigated issue regarded points assessed for offenses committed prior to the defendant's eighteenth birthday); United States v. Peltier, 276 F.3d 1003 (8th Cir. 2002) (litigated issue was whether the defendant's numerous prior burglaries were separated by intervening arrests and therefore "unrelated" for the purpose of assigning criminal history points); and United States v. Oetken, 241 F.3d 1057 (8th Cir. 2001) (litigated issue was whether post-offense conviction could serve as a qualifying crime of violence). We also note that Lazarski was decided after Pierce's sentencing hearing.

[5]Although the Guideline error in question was raised in Pierce's direct appeal, we chose not to disregard the appeal waiver based upon a potential miscarriage of justice. See generally United States v. Snelson, 555 F.3d 681, 685 (8th Cir. 2009) (noting even when a defendant has clearly and unambiguously waived his right to appeal, the government has the burden of proving that dismissing the appeal would not result in a miscarriage of justice).

intuitive" Guideline argument was overlooked by several extremely competent folks, starting with the probation officer (whose primary job is to calculate Guideline sentences) and ending with the district court. This bolsters the conclusion that there was no actionable Sixth Amendment violation. In order for this standard to be met, counsel's error must have been so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Given the unusual circumstances of this case, including the paucity of case law describing this precise situation, the fact that a myriad of others missed the same point, and most persuasive, the precedent set forth by King in refusing to find ineffective assistance for the same error, we cannot hold that Strickland's standard has been met.

## III.   CONCLUSION

Following King, we find that Pierce's trial counsel was not unconstitutionally ineffective. We therefore reverse and remand to the district court for further proceedings.

_____